**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JESSICA ROSE,

      Plaintiff,

                                         CASE NO.:  8:16-CV-02688-JSM-TBM

v.

NAVIENT SOLUTIONS, LLC., and
STUDENT ASSISTANCE CORPORATION,

      Defendants.

---

**RESPONSE TO DEFENDANT, NAVIENT SOLUTIONS, LLC'S, MOTION FOR PROTECTIVE ORDER (DOC. 37) AND SUPPORTING MEMORANDUM OF LAW**

---

Plaintiff, Jessica Rose, by and through her undersigned counsel, respectfully submits this response in opposition to Defendant, Navient Solution LLC's ("NSL"), Motion for Protective Order (Doc. 37) and states the following in opposition:

<u>**INTRODUCTION**</u>

Defendant's ceaseless harassment of Plaintiff, plays like a horrific robo-call version of *Groundhog Day*, with Plaintiff doomed to endure Defendant's atrocious conduct, day in and day out, all while ignoring her nearly identical pleas for the torment to end. On April 20, 2015, Plaintiff clearly stated "Don't call me again, take my phone off your list, don't call me again, Alright, thank you." On May 1, 2015, Plaintiff requested she be placed on the Defendant's "do not call list." On June 17, 2015, she then stated "Why do you people keep calling me? I don't understand it.  I just received the bill, I paid it last month I am going to pay it this month, why are you calling me? I have asked you to stop calling me," Defendant replied that the phone calls will continue.  On June 25, 2015, Plaintiff reminded the Defendant, "I asked you not to call me." The requests for the calls

to stop continued on November 4, 2015, when Plaintiff told Defendant "[s]top calling this number," and again on December 16, 2015 when she clearly said "you need to stop calling me." Shortly thereafter, on January 6, 2016, Plaintiff again instructed "you need to stop calling me," yet the Defendant had the audacity to reply "No, the calls will continue, thank you." On January 19, 2016, Plaintiff repeated "you need to stop...sir.. you need to stop calling.  You need to stop calling me… you need to stop calling me," and Defendant's agent replied "well we are not going to because we have reason to believe this is Jessica." And, as promised, the Defendant called Plaintiff the very next day.  Defendant ignored Plaintiff's repeated pleas for the calls to stop, and proceeded to robocall Plaintiff an undisputed 373 times in total, with 310 of those calls occurring after the April 20, 2015 conversation.

Plaintiff filed her Complaint (Doc. 1) on September 19, 2016, alleging Defendant violated the Telephone Consumer Protection Act ("TCPA"), Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Practices ("FCCPA").  This case is about the 310 times Defendant called Plaintiff in willful and knowing violation of the TCPA, as well as the harassing, oppressive, and abusive nature of those phone calls in violation of the FDCPA and FCCPA.

## FACTUAL BACKGROUND

The deposition sought by Plaintiff and properly noticed to Defendant on May 15, 2017 are wholly relevant to Plaintiff's claims in this matter and highly proportional to the needs of the case. Most specifically, the testimony of Angela Kamionka, Head of the Office of Customer Advocate is vital to Plaintiff's ability to prove the potential willful or knowing nature of Defendant's violations under the TCPA, as well as damages under the FDCPA and FCCPA.  While this is unfortunately becoming an all too familiar pattern of behavior by both Defendant and its counsel,

2

it is still disappointing that Plaintiff finds herself having to respond to such a frivolous and misleading motion today.  However, Defendant and its counsel's actions precipitating the filing of their Motion (Doc. 37) necessitate bringing to light Defendant's misstatement of facts and blatant omissions from the record.

Notwithstanding Defendant's flawed position regarding proportional discovery in this case, which is comprehensively addressed in Plaintiff's argument below, Defendant's Motion improperly presents an issue to the Court in support of its motion that was never discussed, or even raised by opposing counsel, during the parties' 3.01(g) conference held on June 2, 2017, or in any other correspondence between the parties.  Pursuant to Federal Rule of Civil Procedure 30(b)(1), on March 15, 2017, Plaintiff served Defendant with Notices of Deposition for: "Angela Kamionka, Head of the Office of Customer Advocate" for NSL (**Exhibit "A"**). Contrary to Defendant's blatant mischaracterization that "Rose made no effort to determine NSL's or Kamionka's availability" (Doc. 37 at 3), Plaintiff made efforts to accommodate and coordinate the deposition. Accompanying Plaintiff's Notice of Deposition served on March 15, 2017, Plaintiff also included a cover letter to opposing counsel informing Defendant "In the interest of judicial economy and efficiency, I've scheduled dates for these video depositions." (**Exhibit "B"**).  Plaintiff's correspondence went on to encourage Defendant, "…if there happens to be any conflict with the proposes dates and times currently scheduled, we are kindly requesting alternative deposition dates *within the next 72 hours.*" (**Exhibit "B"**) (emphasis added).  On March 31, 2017, opposing counsel emailed the undersigned, "NSL does not believe a deposition of Angela Kamionka is necessary.  Please let me know your availability for a meet and confer tomorrow or Friday on this." Defendant made no mention of any issues with availability, nor did Defendant provide Plaintiff with alternative dates and times for the deposition within 72 hours, as Plaintiff's March 15, 2017

correspondence so courteously requested.   Furthermore, the parties held a 3.01(g) conference on June 2, 2017, during which Defendant never once raised the issue of availability.   In fact, Defendant's improper objections to Plaintiff's Notices, served mere hours before filing its Motion [Doc. 37] on June 2, 2017 and over two weeks after Plaintiff properly served her notices, was the first time Defendant *ever* raised the issue of NSL, its counsel, or Ms. Kamionka's availability for deposition. Opposing counsel never once mentioned an issue or concern with availability during repeated email correspondence with Plaintiff or during the parties' 3.01(g) conference held on June 2, 2017.

The testimony of Ms. Kamionka is highly relevant and essential to Plaintiff's ability to put on a case for knowing or willful violations of the TCPA, as well as actual and punitive damages under the FCCPA.  On April 11, 2017, this Court made it clear that discovery related to prior complaints, specifically those "maintained by NSI's Office of Customer Advocate and its Supervisor, Angela Kamionka" are relevant to Plaintiff's claims, including her claim for damages, and proportional to the needs of her case. (Doc. 33 at 3). Not surprisingly, similar to Defendant's meritless argument in support of its refusal to provide responses to Plaintiff's straightforward discovery requests at issue in her Motion to Compel (Doc. 24), Defendant is now dismissively characterizing Plaintiff's requested discovery depositions as "unnecessary and will add nothing to Rose's ability to prove her claims." (Doc. 37 at 5).  Akin to this Court's rationale in its recent Order granting Plaintiff's Motion to Compel (Doc. 33), the deposition testimony from Ms. Kamionka is equally of *paramount importance* to proving the *willful or knowing* nature of Defendant's TCPA violations, as well as to Plaintiff's ability to establish damages under the FDCPA and FCCPA, which potentially include punitive damages.

4

Defendant clings to the argument that NSL's corporate representative deposition, currently scheduled for June 13, 2017 should be enough for Plaintiff.  However, a deposition pursuant to Federal Rule 30(b)(6) does not foreclose on the opportunity for depositions of fact witnesses. In its efforts to confine the Plaintiff to a single deposition, Defendant is essentially trying to dictate Plaintiff's litigation strategy, instructing the Plaintiff, and this Court what Defendant believes the Head of the Office of Customer Advocate can—or more fittingly, cannot—"offer Rose that will assist in the proof of her claims." (Doc 37, at 2).  However, such direction from Defendant is inappropriate on this issue.  *See Bartlett v. Navient Solutions, LLC*, No. 0:16-cv-62038-WPD, Dkt. No. 26 (S.D. Fla. Apr. 27, 2017) ("NCL's [sic] assertion that the witnesses have no knowledge that would be useful is self-serving and unsupported. The witnesses surely will have knowledge of the Defendant's policies and procedures, and Plaintiff should not have to rely solely on the corporation's official testimony.").

The deposition of Ms. Kamionka is abundantly proportional to the needs of this case and highly likely to lead to admissible evidence.  The willful or knowing nature of Defendant's violations of the TCPA, along with its frequency and persistence of noncompliance with the FDCPA and FCCPA, are exactly what is at issue in this case.  Defendant relentlessly called Plaintiff *at least* 310 times after she unequivocally revoked her consent to be called on more than one occasion. Despite Plaintiff's clear revocations of consent (which have been discussed at great length above), Plaintiff believes Defendant willingly and knowingly refused to document her account accordingly, and proceeded to robocall her more than 310 times.

At best, this Motion is yet another component of Defendant's litigation strategy designed to delay, obstruct, and blockade at every turn.  At worst, it is an example of purposeful misrepresentations of fact to the Court and distorted accounts of conversations between the parties,

all in an effort to stonewall Plaintiff from deposing basic fact witnesses.  Unfortunately, this "blockade" business model of refusing to allow *any* of Defendant's supervisors to be deposed is not isolated to just this case.  It seems to pervade every matter between the undersigned and NSL. Aside from this Court's recent Order granting Plaintiff's Motion to Compel Discovery Responses (Doc. 33), the undersigned has also faced this *exact* tactic of refusing to provide fact witnesses for deposition in every other matter litigated with Defendant and its counsel. Recently, the Southern District of Florida in *Cedeno v. Navient Solutions, LLC*, Magistrate Judge Otazo-Reyes denied a nearly identical motion for protective order filed by Defendant and defense counsel, finding that the deposition of a fact witness noticed pursuant to Fed. R. Civ. P 30(b)(1) is "relevant and proportional to the needs of the case." *Cedeno v. Navient Solutions, LLC*, No. 0:16-cv-61049-AOR, Dkt. 41 at 1 (S.D. Fla. Dec. 8, 2016).  In *Bratcher v. Navient Solutions, LLC*, a Court in this District denied Defendant's again nearly identical Motion, concluding that "[t]here is no indication that Plaintiff is proceeding in bad faith. Plaintiff is facing similar expenses to Defendant in taking the subject depositions. In short, this is not a relatively rare case where the subject depositions, which are within the number allowed and appear relevant to the claims and defenses, should be prohibited altogether." *Bratcher v. Navient Solutions, LLC*, No. 16-00519-HES-JBT, Dkt Nos. 24, 28, (M.D. Fla., Mar. 14, 2017).  And again, most recently in *Bartlett v. Navient Solutions, LLC*, in regards to Defendant's attempts to prohibit the deposition of Angela Kamionka, as well as an individual collector, "[b]alancing the interests of the parties here compels a ruling in the Plaintiff's favor." *Bartlett v. Navient Solutions, LLC*, No. 0:16-cv-62038-WPD, Dkt. No. 26 (S.D. Fla. Apr. 27, 2017).

Contrary to Defendant's mischaracterization of these depositions as being "entirely unnecessary and burdensome and clearly intended to harass NSL," the only unnecessary burden

6

imposed in this matter is Defendant's *continued refusal* to cooperate with basic discovery, culminating with its baseless Motion needlessly involving the Court. (Doc. 37).  Regrettably, it appears as though only court intervention will put an end to Defendant's obstructive behavior.

## LEGAL ARGUMENT

"As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony." *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (internal citations omitted).  The Defendant's Motion for Protective order should be denied.  As an initial matter, Defendant asserts baseless arguments in support of its Motion (Doc. 37) that Plaintiff failed to determine the availability of NSL, its counsel, are particularly meritless because Defendant never conferred with Plaintiff about any such issues.  This alone should result in denial of the relief sought. *See* M.D. Fla. L.R. 3.01(g); *Marler v. U-Store-It Mini Warehouse Co.*, No. 09-60613-CIV, 2011 WL 1430262, *1 (S.D. Fla. Apr. 14, 2011) ("filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation" as required by the Local Rule's conferral requirements).  Consequently, the Defendant's Motion violates certain provisions of Local Rule 3.01(g), and therefore Defendant's Motion be denied, as violations of Local Rules in general require denial because "a valid local rule has the force of law." *Cheshire v. Bank of Am., NA*, 351 F. App'x 386, 388 (11th Cir. 2009); *see also Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990) (affirming the lower court's denial of a motion that failed to comply with applicable local rules, holding that "[p]ractioners must adhere to applicable local rules in order for those local rules to have effect and federal courts by enforcement will preserve the integrity of local rules, absent problems of a constitutional dimension."); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir. 1973), *cert. denied*, 414 U.S. 858 (1973) (holding that the district court properly denied a motion

7

to compel for failure to adhere to the requirement of the local rules that the moving party must "notify the court of its attempts to resolve the controversy"); *Barcomb v. Fiserv Health, Inc.*, No. 8:08-cv-1790-T-23TGW, 2009 WL 2765468, at \*4 (M.D. Fla. Aug. 27, 2009) (finding the failure to comply with Local Rule 3.01(a) rendered a motion "patently deficient"); *Dyett v. North Broward Hosp. Dist.*, No. 03-60804 CIV, 2004 WL 5320628, \*1 (S.D. Fla. Apr. 26, 2004); *Hoglund v. Limbach Constructors, Inc.*, No. 95-2847, 1998 WL 307457, at \*4 (S.D. Fla. Mar. 30, 1998) (holding that a party's failure to comply with clear mandate of Local Rule 26.1.G.6(b) constituted waiver of party's privilege objection over production of her diary); *Longariello v. School Bd. of Monroe County*, 1996 LEXIS 21661, at \*6 (S.D. Fla. 1996) (denying motion for summary judgment in part upon movant's failure to comply with Local Rule 7.5 by not filing a concise statement of facts); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329–30 (6th Cir. 1973), *cert. denied*, 414 U.S. 858 (1973). In fact, Defense counsel *never once* raised any issue regarding availability, making the Defendant's assertion particularly disingenuous, and their Certificate of Good Faith Conference misleading and patently untrue.

The Defendant's position that this discovery is disproportionate to the needs of the case is equally well off base, a conclusion punctuated by the fact that the Defendant was unable to cite even a *single* opinion granting a protective order under similarly unavailing circumstances.  For starters, how Defendant can claim that only a single deposition is proportionate to the needs of this case is shocking given that the Defendant is facing a potential exposure of $465,000 on Plaintiff's TCPA claims alone. While the Defendant has contended that a 30(b)(6) deposition is all that is needed in this case, this unprecedented argument deliberately omits the fact that a 30(b)(6) deposition is designed only to establish the official position of a corporate party to litigation through a well-prepared, professional witness (typically an executive or manager) that often lacks

8

personal knowledge of the matters testified to.  *See e.g., Miller v. Union Pac. R. Co.*, No. CIV.A.06-2399-JARDJW, 2008 WL 4724471, at *2 (D. Kan. Oct. 24, 2008) (noting that "the designated corporate representative does not give her or personal opinion like an individual does, but rather presents the corporation's position on the topic").  In other words, the purpose of a 30(b)(6) deposition is solely to require a corporation to put forth a "party line" that it can be bound to, not to supplant a litigant's right to question operational-level employees with actual personal involvement with the matters at issue in the litigation.  *See N. States Power Co. v. City of Ashland, Wis.*, No. 12-CV-602-BBC, 2015 WL 1745880, at *2 (W.D. Wis. April 16, 2015) ("Fed. R. Civ. P. 30(b)(6) provides a mechanism for finding information known to an organization; it does not prohibit employees from testifying about their own activities or their personal knowledge related to the organization."); *Washburn v. Gymboree Retail Stores, Inc.*, No. C11-822RSL, 2012 WL 5360978, at *6 (W.D. Wash. Oct. 30, 2012) (noting the problems created when a corporate representative gave false testimony by "refus[ing] to deviate from the [corporation's] party line response"). Furthermore, any concern of duplicative discovery is without merit.  In distinguishing the different roles between a 30(b)(6) deposition and a 30(b)(1) deposition, a party is "entitled to tie down the definitive positions" of the opposing party, "[e]ven if the substance of the information ultimately provided mirrors that of the testimony" previously acquired.  *New Jersey v. Sprint Corp.*, No. 03-20710JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010).[1]  To accept the Defendant's arguments as to the requested protective order would be effectively to hold that the Plaintiff is not entitled to the best evidence that might contradict the "party line" testimony of the Defendant's

---

[1] The *New Jersey* court went further to conclude that the "plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served.  Such a result would essentially limit a plaintiff to the first form of discovery served, since topics are bound to overlap." *New Jersey*, 2010 WL 610671, at *2.

9

corporate deponent, a situation that would both be manifestly unfair and contrary to the principles of due process.

That is not the only fatal flaw with the Defendant's request for a protective order. The Defendant also cites no particular hardship that would be suffered by NSL, its counsel, or any of the three witnesses identified in Plaintiff's Notices, other than the ordinary inconvenience that any person might suffer in attending a deposition. Such arguments are manifestly insufficient to warrant issuance of a protective order under well-established law. *See, e.g., Bay Area Healthcare Advisors, LLC v. PremierTox 2.0, Inc.*, No. 1:16-CV-00020-HBB, 2016 WL 4203594, at *2 (W.D. Ky. Aug. 9, 2016) ([G]ood cause is not established by merely showing that discovery might involve inconvenience or expense."); *Smith v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1597-MMD-VCF, 2014 WL 2770691, at *2 (D. Nev. June 17, 2014) ("A mere showing that the discovery may involve some inconvenience or expense does not establish good cause."). Furthermore, the Defendant's assertions as to the supervisor's purported lack of knowledge are particularly problematic in this instance, as they are made under circumstances that constitute a blatant conflict of interest due to Defendant's counsel's obvious incentive to protect the Defendant from damaging discovery, and consist only of the unsworn representations of Defendant's counsel rather than sworn evidence, such as an affidavit by the witness. *See Duncan v. Husted*, No. 2:13-CV-1157, 2014 WL 4659863, at *2 (S.D. Ohio Sept. 17, 2014), *on reconsideration in part*, No. 2:13-CV-1157, 2015 WL 631103 (S.D. Ohio Feb. 12, 2015) (noting that it is "unreasonable burden" not just "general burden" that must be established to warrant a protective order and that a "'particular and specific demonstration of fact,'" such as an affidavit, is required to justify a protective order).

Moreover, these assertions do not even come close to foreclosing the usefulness of the supervisors' testimony in this case. It is almost certain that each supervisor has a significant

10

recollection of the Defendant's policies and procedures, as well as information regarding how well any such regulations were adhered to.  Such evidence could be used by the Plaintiff to challenge the Defendant's "party line" on key issues and prove critical to putting on a case for willful or knowing violations of the TCPA, as well as damages under the FDCPA and FCCPA, which potentially include punitive damages.  Further, the Plaintiff should not be required to reveal, as a condition of taking a routine deposition, every detail of the intended lines of questioning and thus disclose attorney work-product by laying out a "road map" of every expected topic to be asked at the deposition.  Here, the Plaintiff is well below the ten depositions that pursuant to Rule 30(a)(2)(A) may be taken without leave of Court, and leeway should be granted to Plaintiff's counsel to conduct discovery in the case consistent with the best interests of her client.

<u>CONCLUSION</u>

As explained in detail above, Defendant's Motion for a Protective Order (Doc. 37) should be denied, and Defendant should be ordered to cooperate appropriately in the discovery process to resolve any lingering disputes.

WHEREFORE, Plaintiff, Jessica Rose, respectfully requests this Honorable Court to enter an order denying Defendant's Motion for Protective Order and for Attorney's Fees, and for such other and further relief as this Court deems just and proper.

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 9, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

11

s/*Amanda J. Allen*

**Amanda J. Allen, Esq**.
Florida Bar No. 0098228
William Peerce Howard, Esq.
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Shenia@TheConsumerProtectionFirm.com